## WALZ et al. v. FIDELITY–PHŒNIX FIRE INS. CO. OF NEW YORK.

(Circuit Court of Appeals, Sixth Circuit. January 6, 1926.)

No. 4317.

**1. Trial ⬤⟾70—Reopening of case and calling of witnesses after disagreement of jury held reversible error.**

In suit on fire policies, where jury had in practical effect already disagreed, reopening of case and calling by court of witnesses not examined by counsel *held* reversible error, where there was no suppression or quasi suppression of apparently material evidence.

**2. Appeal and error ⬤⟾1033(7)—Finding in favor of litigant not ground for complaint.**

Litigant cannot complain on appeal of a finding in his favor, nor proceedings which lead up to it.

**3. Evidence ⬤⟾77(1)—Counsel might take creditor's interest into account in deciding to submit to any inference drawn by not calling certain apparently material witnesses.**

Question whether a witness shall testify being normally one for counsel to decide finally, in suit by trustee for creditors of insured on fire policy, though he stood in most respects in shoes of insured, counsel might take creditors' interest into account in deciding to submit to any inference which might be drawn by not calling certain apparently material witnesses.

**4. Judgment ⬤⟾828(1)—Judgment in state court not controlling adjudication in suit in federal court.**

In suit on fire policies, removed from state to federal court, judgment in state court in one of unremoved cases was not controlling.

**5. Evidence ⬤⟾272—Statements against interest by insured and her agent, after assignments for security of causes of action on fire policies, held admissible.**

In suit on fire policies, where insured was equitable owner of cause of action, subject to charge for her debts, and plaintiff was not a bona fide assignee for value, statements against interest by insured and her agent after assignments were admissible, subject to proper limitation.

**6. Insurance ⬤⟾553(1)—Absolute personal knowledge of insured that statement in proofs of loss was false not required to defeat recovery on fire policies.**

If insured's statement in proofs of loss was intended to get money, and was materially false, and believed by her to be false, her absolute personal knowledge that it was false was not required to defeat recovery on fire policies.

**7. Insurance ⬤⟾4—Statute passed after fire held inapplicable to loss.**

In suit on fire policies, act of 1921, passed after fire, *held* inapplicable to loss.

**8. Evidence ⬤⟾260—Declarations of another, depending on finding of conspiracy, not received preliminarily, except with caution.**

Declarations of another, not covered by principles of agency, and which depend for their ultimate rightful presence in the case on finding by jury that a conspiracy did exist, should not be received preliminarily, or retained in case, except with great caution.

In Error to the District Court of the United States for the Eastern District of Michigan; Arthur J. Tuttle, Judge.

Separate suits by William L. Walz, trustee, and others against the Fidelity-Phœnix Fire Insurance Company of New York and others, removed from the state court and tried together. Judgment for defendant named, and plaintiffs bring error. Reversed and remanded.

James O. Murfin, of Detroit, Mich. (Cavanaugh & Burke, of Ann Arbor, Mich., on the brief), for plaintiffs in error.

Arthur P. Hicks and Henry C. Walters, both of Detroit, Mich. (Frank B. De Vine, of Ann Arbor, Mich., on the brief), for defendant in error.

Before DENISON, DONAHUE, and MOORMAN, Circuit Judges.

PER CURIAM. Sarah Goffe was doing business as the Ann Arbor Stamping & Metal Company. Her husband, Jacob, was more or less her general manager. By a group of policies, she carried an insurance of $94,000 on the buildings, $71,000 on equipment, and $210,000 on stock and materials, manufactured and unmanufactured. Following a fire, she submitted proofs, claiming $560,000 loss, of which $375,000 was for stock and material. She was largely indebted to the Ann Arbor Savings Bank, partly secured by mortgage on the property, and partly unsecured. The plaintiff in this action, Walz, was cashier of the bank, and all her claims against the insurance companies she assigned to him as trustee, to collect, pay her debts, and return the surplus to her. The insurance companies denied liability, on the grounds that the fire was purposely caused by or for her, and that the proofs were fraudulent, as claiming losses for property which was not in the fire, and as claiming losses which had not accrued to the property which had gone through the fire. Suits were brought in the state court upon all the policies, the nonresident defendants removed their cases to the federal court, and all of them were tried as one case, resulting in the judgment for the defendants, now under review.

After a trial of several weeks, involving not only the amount of the actual loss, but the defensive issues of fraudulent fire and fraudulent proofs, the jury was charged and

retired. At the end of about 48 hours, and after successive reports from the jury, and after some supplemental charges had been given or refused, it became evident that the jury was about equally divided, that for 24 hours it had made no progress toward agreement, and that the jurors were convinced they could not agree. In answer to questions from the court, counsel for each party then said he thought an agreement was hopeless, and that the jury must be discharged. Thereupon the trial judge announced, in effect, that the public interest and the pressure of business upon the court made it important to get an agreement, if possible; that he thought the jury was unable to agree because controlling evidence had been kept away from them; that upon the two defensive issues Mr. and Mrs. Goffe and Sands and Isaacs were the persons who were best informed, and though all had been available, and some of them in the courtroom, no one of them had been called as a witness by either party; and that, under all the circumstances, this was a suppression of evidence which the court, in the public interest, should not permit. Accordingly he caused these four witnesses to be called, and they were examined in part by the court and to some extent by the parties, each of whom, however, disclaimed any responsibility for the witnesses. Further argument and charge were waived by both parties. Two special questions were submitted—as to whether the fire was set by or for plaintiff, and whether there was fraud in the proofs of loss. The first question the jury answered in the negative, and the second in the affirmative, and there was a judgment for the defendants.

[1-3] We think there must be a reversal, on account of the reopening of the case, instead of discharging the jury. We base this conclusion on the particular facts of this case, without passing in any more general way upon the powers or duties of the trial judge under more or less analogous situations. The issue of intentional fire has, for the purposes of this review, disappeared from the case; the jury found the fire was not so caused, and the plaintiff cannot complain of this result nor of the proceedings which led up to it. That left the claim of fraudulent proof as the only defense remaining pertinent. The proof strongly tended to show—to say the least—that the statements of property destroyed were greatly exaggerated, and the substantial controversy was whether these excessive claims were made fraudulently or in good faith. Upon this point Mrs. Goffe and her husband, so far as he represented her in

the matter, seemed to be the best witnesses. However, as it turned out, and as plaintiff's counsel probably knew, they were unable as witnesses to make entirely satisfactory statements as to the vast amount of detail involved. This inability, even if perfectly honest, was bound to count against their credibility. Plaintiff's counsel had doubtless considered this question from both sides, and decided that the interest of the creditors represented by the plaintiff made it wiser for him to submit to any inferences which might be drawn from not calling these witnesses, rather than to suffer the inferences which their ignorance or confusion might create. Such a question is, normally, a proper one for counsel to decide finally; and, even though the plaintiff trustee stood in most respects in the shoes of the insured, yet, in deciding a question like this, counsel may well take the creditors' interest into account.

We conclude that, under these conditions, there was no such suppression, or quasi suppression, of apparently material evidence as to justify the trial judge in the course taken. If important documents, or facts which would appear rather indisputably, or an entire subject-matter[1] were omitted, the power of the judge to complete the record would present a different question; and it is not without importance that the jury had, in practical effect, already disagreed. If such action by the trial judge as that here involved had been taken upon the close of the evidence, the case would have a different aspect, while postponing it till the jury has disagreed will tend to encourage experimentation.

[4-8] Since the case must be tried again, the other errors chiefly urged should be noticed, even if not duly saved:

(a) The judgment in the state court in one of the unremoved cases is not an adjudication controlling this one.

(b) Mrs. Goffe was the equitable owner of the cause of action, subject to the charge for her debts, and Walz, trustee, was not a bona fide assignee for value. Hence, if for no other reason, the admission and statements aginst her interest by Mrs. Goffe and her agent, made after the assignments, were generally admissible. If their effect

---

[1] In Bank v. Maines (C. C. A. 6) 195 F. 62, 115 C. C. A. 64, after the testimony was closed and each party had offered no proof on one issue, claiming the burden was on the other, the trial judge called a witness having knowledge thereon, opening the subject, which the parties then tried out. This course was approved, sub silentio, by this court.

should be limited, as against any special interest represented by plaintiff, that can be carefully done.

(c) The trial judge's definition of that fraud in the proofs of loss which would defeat the policy was sufficiently favorable to Mrs. Goffe. If her statement was intended to get money, and was materially false, and was believed by her to be false, we know of no rule, state or federal, which would require also her absolute personal knowledge that it was false. Indeed, we do not observe that upon the trial she was required to answer for the fraud of her agent, acting within the scope of his employment, or for that fraud sometimes imputed to a statement made without any reasonable ground to believe it true.

(d) The act of 1921, passed after this fire, had no application to this loss, even if otherwise applicable to the case.

(e) Plaintiff's requests, as far as proper, were given in substance.

(f) The declarations of another, not covered by the principles of agency, and which depend for their ultimate rightful presence in the case upon the finding by the jury that a conspiracy did exist, should not be received preliminarily, or retained in the case, except with great care and caution. This will not be overlooked on retrial.

(g) Other points discussed, as far as there may be any fair ground for criticism, will probably not arise again.

The judgment is reversed, and the case remanded for a new trial.